P. Raymond Sirignano, J.
This is a motion by defendant for an order pursuant to subdivision (b) of CPLR 3212 granting summary judgment in its favor against the plaintiffs.
Plaintiff has cross-moved for an order striking out defendant’s answer and directing that summary judgment be awarded in her favor against the defendant upon the causes of action set forth in the complaint.
This action is being brought by plaintiff on behalf of her two minor children wherein she seeks to impose liability upon the defendant bank for permitting the father of the afore-mentioned minor children to withdraw funds from two custodial accounts which the father had opened and maintained in the defendant bank from 1967 until the date of withdrawal, to wit, January 18, 1971.
It is undisputed that the aforesaid custodian accounts were opened by the father of the children, Daniel Ciriello, under the provisions of the Uniform Gifts to Minors Act, now part 4 of article 7 of EPTL, and that he maintained and increased the balances in the afore-mentioned custodian accounts by depositing additional moneys in each of the two accounts from time to time. That as of January 18, 1971, the date of the withdrawal, their status was as follows :
Account No. 34772 in the name of ‘ ‘ Daniel Ciriello, as custodian for Daniel Ciriello, Jr.”, had a balance of $17,403.46 to its credit, and account No. 34771 in the name of“ Daniel Ciriello, as custodian for Gail Marie Ciriello ’ ’, had a balance of $11,717.06.
It is also undisputed that the defendant bank on January 18, 1971, issued two checks to Daniel Ciriello in his capacity as custodian for the balances in the respective accounts, which checks were apparently deposited in custodian accounts in Greenwich, Connecticut.
The material facts are as follows:
In early January, 1971, Mr. Ciriello came to the Fleetwood office of the defendant bank and made inquiry about the withdrawal of the funds in the afore-mentioned custodial accounts. He was told to bring in the bank passbooks. Prior to his return to the bank on January 8, 1971 to state that he had lost the passbooks and that he desired to use the procedures available for withdrawal on an affidavit of loss, the Fleetwood office of the defendant bank had received a letter from an attorney cláiming to represent the plaintiff stating that the plaintiff claimed the funds in the two accounts and that withdrawals should not be made without her consent. The letter and Mr. Ciriello were *427 referred to Charles B. Sillery, the administrative vice-president and secretary of the defendant bank at its main office.
Mr. Sillery personally supervised the execution of the lost passbook affidavits with regard to both accounts by the custodian, and he advised Mr. Ciriello to wait at least 10 days before returning to make withdrawals.
Mr. Sillery then telephoned the plaintiff’s attorney and advised him that lost0passbooks affidavits had been executed by Mr. Ciriello and that the bank would require that a restraining order pursuant to subdivision 5 of section 239 of the Banking Law be served upon it; otherwise it would be required to turn the moneys over to the depositor on demand. The plaintiff’s attorney said that he would take action to get the necessary court order and on January 8,1971 he sent another letter to the defendant bank confirming his intention to obtain a restraining order and further asserting that the passbooks for the two custodial accounts were in the possession of the plaintiff Betty Ciriello, and that the affidavits as to their loss were false.
That on January 18,1971 when the custodian, Daniel Ciriello, returned to the bank, Mr. Sillery discussed the second letter that he received from plaintiff’s attorney with him, and Mr. Ciriello re-executed his original affidavits regarding the lost passbooks to assert the status of the passbooks despite the claim of Mrs. Ciriello that they were in her possession. Since no restraining order had been received by the defendant bank as of that date, withdrawal certificates were executed by Mr. Ciriello and approved by Mr. Sillery, and two checks were issued to Mr. Ciriello as custodian and he left the bank. The two checks were subsequently indorsed by Daniel Ciriello as custodian, and they were deposited in custodian accounts in another bank in Greenwich, Connecticut.
It is the plaintiff’s contention that the defendant bank had actual notice prior to the withdrawal of the funds on deposit in the two custodial accounts that any withdrawal by Daniel Ciriello as custodian would constitute a breach of his obligations as a custodian. That since the bank paid over the funds notwithstanding this notice, such payment was improper and therefore the bank is liable to the plaintiff and summary judgment should be awarded in favor of plaintiff.
Defendant, on the other hand, contends that summary judgment should be awarded in its favor and the cross motion should be dismissed as there is no liability upon its part for having transferred the funds absent an order directing it not to ppy the funds over to the depositor by a court of competent jurisdiction. *428 The applicable statute which governs custodial accounts and the treatment of custodians holding securities is EPTL 7-4.5. In its applicable part it provides: ‘‘ No * * * bank * * * or financial institution acting on the instructions of or otherwise dealing with any person purporting to act as a donor or in the capacity of a custodian is responsible for determining whether the person designed [designated] as custodian * * * or purporting to act as a custodian has been duly designated or whether any * * * transfer * * * by * * * any person purporting to act in the capacity of custodian is in accordance with or authorized by this part * * * is obliged to inquire into the validity of any instrument or instruments executed or given by a person purporting to act * * * in the capacity of a custodian ”.
Subdivision 9 of section 134 of the Banking Law in its applicable part provides: “ Deposits by custodian for a minor under article eight-a of the personal property law. When any deposit of cash * * * shall be made by a person purporting to act as custodian for a minor under article eight-a of the personal property law * * * the deposit * * * may be paid or delivered to or upon the order of such person * * * to a minor upon the minor’s attaining twenty-one years * # * and any receipt or order of such person * * * shall be valid and sufficient release and discharge of the depositary for any payment or delivery so made. No depositary dealing with a person purporting to act as a custodian * * * shall be bound to inquire into any facts bearing upon the designation of such person as such cutodian or the propriety of or the authority for any act of such person. * * * No depositary shall be liable for any act performed pursuant to the instruction or direction of any person purporting to act as custodian * * * unless the depositary has actual knowledge that such act * * * constitutes a breach of such person’s obligations as such custodian ”.
Subdivision 5 of section 239 of the Banking Law in its applicable parts provides: ‘1 Notice to any savings bank of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause such savings bank to recognize such adverse claimant unless he shall also either procure a restraining order, injunction or other appropriate process against such savings bank from a court of competent jurisdiction in a cause therein instituted by him wherein the person to whose credit the deposit stands * * * is made a party and served with summons, or shall execute to such savings bank *429 * # * a bond, indemnifying such savings bank from any and all liability ’ ’.
The question presented to the court for determination is, which of the sections of the Banking Law is to prevail — section 134 or section 239.
Section 134 of the Banking Law is a part of article 3 thereof which applies to banks and trust companies, while section 239 is a part of article 6 thereof, and is applicable solely to savings banks.
Although it appears that subdivision 5 of section 239 has its counterpart in section 134, subdivision 9 of section 134 is not found in section 239.
Since no comparable provision has been included in section 239, the court cannot apply this provision to a savings bank.
Even if the provisions of subdivision 9 of section 134 were applicable, in the instant case the letters sent to the defendant bank do not, in the court’s opinion, allege any facts which would place the bank on notice that the custodian was breaching his duties. ^
The purpose of subdivision 5 of section 134 and subdivision 5 of section 239 is to protect banks against the hazards of double liability in cases where there are adverse claimants (Shafran v. Shafran, 57 Misc 2d 485).
Plaintiff’s attorney was apprised by the defendant bank that it would not accept a letter claim by plaintiff but rather required a restraining order pursuant to subdivision 5 of section 239 of the Banking Law. The plaintiff’s attorney agreed to comply with the requirements of the afore-mentioned statute, but failed to do so.
Subdivisions (e), (f) and (g) of EPTL 7-^4.6 also make provision for the substitution or removal of a custodian. This procedure was not employed by the plaintiffs, rather a letter was sent to the defendant bank dated January 5, 1971, stating that “ Mrs. Ciriello makes claim to these accounts and that no withdrawals shall be permitted to be made on said accounts without the express written authorization of Mrs. Ciriello.”
In a subsequent letter to the defendant bank dated January 8,1971, the attorney for Mrs. Ciriello stated: “ You are further informed that Mrs. Ciriello has retained this office to institute litigation against her husband, including a suit to secure possession of the funds represented by the aforementioned accounts. As soon as this litigation is instituted, we will apply for an order to restrain the bank from honoring any withdrawals on *430 said accounts, pending determination of said litigation. As soon as such order is obtained it will be served upon you.”
Neither of the letters recites any facts which would justify a conclusion by the defendant bank that the plaintiff had a superior claim to the accounts than did her husband who was the named custodian. The letters do not assert that the funds were being diverted by him or otherwise misused, which claim might support and justify an application for the removal or substitution of the custodian.
Nonetheless, the defendant bank did not issue the two checks payable to the custodian in his capacity as custodian for the balances of the two custodial accounts until 10 days after the plaintiff’s attorney was informed of the necessity for obtaining a restraining order.
Since the defendant bank did what it was obligated to do, that is, pay the money upon demand to the custodian in his capacity as custodian, its acts were not wrongful or improper under the circumstances of this case.
Had the plaintiffs procured the restraining order that they admittedly were advised to obtain by the defendant, the latter would have' been constrained to comply with it. Absent such constraint, it was obligated to heed the custodian’s request for the funds.
Accordingly, the court directs that judgment shall be entered in favor of the defendant dismissing .the complaint.
Plaintiff’s cross motion for summary judgment is, in all respects, denied.